IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| LAMAR CONTRACTORS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 2020-48 |
| ) | |
| AECOM CARIBE, LLP, AECOM TECHNICAL ) | |
| SERVICES, INC., AECOM, INC., and ) | |
| U.S. VIRGIN ISLANDS HOUSING FINANCE ) | |
| AUTHORITY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION and ORDER**

Before the Court is "Defendant AECOM Caribe, LLP's [("AECOM")] Motion to Compel Arbitration and Stay Litigation." [ECF 30]. Plaintiff Lamar Contractors, LLC, opposes the motion [ECF 49][1] and AECOM replied [ECF 56]. For the reasons that follow, the Court will grant the motion.

**I.   BACKGROUND**

On September 6 and September 20, 2017, Hurricanes Irma and Maria caused massive damage in the U.S. Virgin Islands. Following the storms, the Federal Emergency Management Agency implemented the "Sheltering and Temporary Essential Power Program" (the "STEP Program") to assist in the recovery of Virgin Islanders. Compl. [ECF 1] ¶ 2. On February 5, 2018, AECOM entered into a contract with the Virgin Islands Housing Finance Authority ("VIHFA," referred to as "Owner" under the contract) to carry out activities under the STEP Program. *Id.* ¶ 21. Lamar provided services for the STEP Program and Virgin Islands residents

---

[1] Lamar initially filed an opposition on August 26, 2020. [ECF 38]. It then filed an amended opposition on September 3, 2020. [ECF 49]. As AECOM's motion was filed on August 21, 2020, the amended opposition was timely, and the Court will consider the arguments in that later opposition.

*Lamar v. AECOM, et al.*
Civil No. 2020-48
Page 2

under a subcontract with AECOM. *Id.* ¶ 3; *see* [ECF 1-2]. Despite having finished its work several years ago, Lamar alleges AECOM has failed to fully pay Lamar for its services. Compl. [ECF 1] ¶¶ 3, 6.

Lamar filed suit on June 16, 2020, naming AECOM and several of AECOM's affiliated companies as defendants. Compl. [ECF 1]. Lamar also named VIHFA as a "non-adversarial Defendant." *Id*. ¶ 17. On August 19, 2020, AECOM initiated arbitration by filing a demand for arbitration with the American Arbitration Association. [ECF 31-1]. AECOM filed the present motion on August 21, 2020. [ECF 30].

AECOM contends that section 6.6.2 of Article 6 of the subcontract requires arbitration of "all such disputes and other matters in question, of any kind, related to or arising out of this Agreement," if AECOM, at its sole option, chooses to resolve the dispute by arbitration, rather than by litigation. [ECF 31] at 4-5, 12; *see* [ECF 1-2] at 23. Further, AECOM points out that the same section of the subcontract provides that "any issues regarding the arbitrability of any dispute shall be determined by the arbitrator(s)." [ECF 31] at 11; *see* [ECF 1-2] at 23. Finally, AECOM argues that arbitration is required not only under the provisions of the subcontract, but also under the Federal Arbitration Act ("FAA") and relevant caselaw. [ECF 31] at 2.

Lamar opposed arbitration and counters with three arguments. First, Lamar contends that section 6.6.1, rather than section 6.6.2, governs whether arbitration is required in this case because VIHFA is a named party. [ECF 49] at 2-5. According to Lamar, section 6.6.1, headed "Claims Related to or Involving Owner," has no mandatory arbitration provision. [ECF 49] at 4; [ECF 1-2] at 23. Next, Lamar claims that Amendment 13 (or Modification Number 13, as the document is titled) to the subcontract incorporated a requirement from the AECOM-VIHFA prime contract

*Lamar v. AECOM, et al.*
Civil No. 2020-48
Page 3

that alternative dispute resolution processes, such as arbitration, may only be employed if the parties mutually agree to use them. [ECF 49] at 5-7; *see* [ECF 38-1] at 1-2. Finally, Lamar argues that the Court must determine whether a valid agreement to arbitrate exists, and that none exists by virtue of Amendment 13 to the subcontract. [ECF 49] at 7-11.

## II.   LEGAL STANDARDS

A.   <u>The FAA</u>

Under the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would have jurisdiction over "a suit arising out of the controversy between the parties" without the arbitration agreement. 9 U.S.C. § 4; *accord Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (observing that an independent basis for federal jurisdiction over a dispute is required and that the FAA is not itself a basis for federal jurisdiction). Here, diversity jurisdiction exists over the underlying substantive dispute under 28 U.S.C. §1332. Thus, this Court has jurisdiction to decide AECOM's motion to compel arbitration.

The FAA applies to a contract "evidencing a transaction involving commerce to settle by . . . or submit to arbitration" any controversy arising out of that contract.[2] 9 U.S.C. § 2. Further, the FAA establishes a "strong federal policy in favor of resolving disputes through arbitration."

---

[2] The FAA defines "commerce" as "commerce among the several States . . . or in any Territory of the United States . . . ." 9 U.S.C. § 1; *see Sewer v. Paragon Homes, Inc.* 351 F. Supp. 596, 598 (D.V.I. 1972) (holding that the FAA "applies to mandate stays of legal proceedings conducted in the District Court of the Virgin Islands"). The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citation omitted). The Supreme Court has further explained that the phrase "evidencing a transaction" means that the transaction turns out, in fact, to involve interstate commerce, "even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995).

The FAA's broad interstate commerce requirement is satisfied in this case; the transaction was between plaintiff, a Louisiana limited liability company, and defendant, a Delaware limited liability partnership, and the contract was to be performed in the U.S. Virgin Islands. Accordingly, the transaction did, in fact, involve interstate commerce.

*Lamar v. AECOM, et al.*
Civil No. 2020-48
Page 4

*Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) (quotation marks omitted). Thus, "the Act [*i.e.*, the FAA], both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate" whenever possible. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (stating that courts are required to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration"). In addition, the FAA requires that written arbitration agreements be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

Accordingly, prior to compelling arbitration pursuant to the FAA, a court must first conclude that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement. *Flintkote Co.*, 769 F.3d at 220. A "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." *In re Pharm. Benefit Managers Antitrust Litig.,* 700 F.3d 109, 116 (3d Cir. 2012) (quotation marks omitted); *see* 9 U.S.C. §§ 3-4.

Finally, "arbitration is a matter of contract, and courts must enforce arbitrations contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citations omitted). Further, " parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id*. at 530. "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid

*Lamar v. AECOM, et al.*
Civil No. 2020-48
Page 5

arbitration agreement exists. *See* 9 U.S.C. §2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, the court may not decide the arbitrability issue." *Id.*

B.  Standards for Deciding a Motion to Compel Arbitration

Where "it is apparent" based on the complaint and supporting documents "that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quotation marks omitted). In other words, "[m]otions to compel arbitration are reviewed under Rule 12(b)(6) '[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint).'" *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015).

Further, in determining whether to compel arbitration, courts rely on the principles of applicable state law. *See Golden Gate Nat'l Senior Care, LLC v. Addison*, 2014 WL 4792386, at *13 (M.D. Pa. Sept. 24, 2014) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989)). Here, section15.2 of Article 15 of the subcontract provides for the application of the "laws of the jurisdiction in which the Project is located." [ECF 1-2] at 27. Thus, the Court will apply Virgin Islands law to the instant contract dispute.

C.  Virgin Islands Law

"The Virgin Islands Supreme Court has not expressly adopted the common law rule for formation of a valid contract." *Valentin v. Grapetree Shores*, 2015 WL 13579631, at *3 (V.I. Super. Ct. June 30, 2015). "However, the basic elements for what constitutes a valid contract are

*Lamar v. AECOM, et al.*
Civil No. 2020-48
Page 6

so widely accepted and fundamental to the practice of law in the Virgin Islands and every other United States jurisdiction that maintaining these elements is unquestionably the soundest rule for the Virgin Islands."[3]  *Id.*  (citing *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014)).  Thus, "[i]n the Virgin Islands, a valid contract requires a 'bargain in which there is a mutual assent to the exchange, and consideration.'"  *Id.; accord Sunshine Shopping Ctr., Inc. v. LG Elecs. Panama, S.A.*, 2018 WL 4558982, at *7 (D.V.I. Sept. 21, 2018) (applying Virgin Islands law).  "Assent is not measured by subjective intent, but by outward expression."  *Valentin*, 2015 WL 13579631, at *3.  Further, "[i]n an arbitration agreement, consideration exists where both parties agree to be bound by the arbitration."  *Id.*

With respect to contract interpretation, the Supreme Court of the Virgin Islands has observed that "[i]f a contract is unambiguous, 'the meaning of [its] terms [i]s a question of law.'" *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 624 (V.I. 2017).  Further,

> [t]o determine whether a contract is ambiguous, we resort to principles of contract interpretation, keeping in mind that our primary purpose is to ascertain and give effect to the parties' objective intent.  *See United Corp.* [*v. Tutu Park, Ltd.*], 55 V.I. at 719 n.14 ("[W]hen a court interprets a contract, its task is not to reveal the subjective intentions of the parties, but what their words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used." . . .) . . . Where the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms.

*Id.* at 624-25.

---

[3] Where prior precedent does not provide "the appropriate common law rule," the court must first "ascertain[] whether any Virgin Islands courts have previously adopted a particular rule, then identify[] the position taken by a majority of courts from other jurisdictions, and finally determin[e] which approach represents the soundest rule for the Virgin Islands."  *Gov't of Virgin Islands v. Connor*, 2014 WL 702639, at *4 (V.I. Feb. 24, 2014) (citing *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011)).

*Lamar v. AECOM, et al.*
Civil No. 2020-48
Page 7

### III.  DISCUSSION

As an initial matter, both Lamar and AECOM view the subcontract as valid and enforceable. Lamar alleges as much in its complaint.[4] *See* Compl. [ECF 1] ¶¶ 3 ("Lamar provided its substantial services for the USVI Project through a subcontract and amendments thereto with AECOM . . . ."), 32 ("On or about February 16, 2018, Lamar and AECOM Caribe entered into the Master Subcontract setting forth the duties and responsibilities that Lamar would undertake for the STEP Program and USVI Project."), 35-37 (discussing the scope of work and payment terms of the subcontract), 79-82 (Count III, alleging AECOM breached the subcontract and seeking damages). AECOM agrees. *See* [ECF 31] at 11 ("[T]here can be no question that the Lamar Subcontract represents a valid agreement.").

As noted, the parties' agreement contains a provision that allows AECOM to mandate that disputes be resolved in arbitration. Specifically, section 6.6.2 of Article 6 of the subcontract provides for arbitration of "all such disputes and other matters in question, of any kind, related to or arising out of this Agreement," at AECOM's sole option. [ECF 1-2] at 23. This language is very broad and, given the plain meaning of the clause, certainly would encompass the failure to pay claim that Lamar raises.

Lamar contends, however, that because it has made VIHFA a party to this action, section 6.6.1 applies, rather than 6.6.2. This interpretation of the agreement appears to be based on the headings of the two sections, which are "Claims Related to or Involving Owner," and "Claims Not Related to or Involving Owner," respectively. *See* [ECF 49] at 4; [ECF 1-2] at 23. Those headings cannot be dispositive, however, as section 15.1 of Article 15 of the subcontract evidences

---

[4] Lamar attached the subcontract as an exhibit to its complaint. [ECF 1-2].

*Lamar v. AECOM, et al.*
Civil No. 2020-48
Page 8

the parties' agreement that the headings "in no way define, limit or describe the scope or intent of this Agreement." [ECF 1-2] at 27. Further, although Lamar argues that the "dispute resolution provision in the Master Subcontract Agreement found at Section 6.6.1 [] explicitly controls," [ECF 49] at 2, the Court can find no "dispute resolution provision" in that section. Rather, section 6.6.1 appears to involve the additional obligations imposed on Lamar when AECOM determines that a claim is "related to the Owner or the rights/obligations of the Owner." The section in no way addresses how disputes between AECOM and Lamar are to be handled.

Lamar next argues that Modification Number 13 to the subcontract incorporated a requirement from the AECOM-VIHFA prime contract that arbitration may only take place if the parties mutually agree to arbitrate. [ECF 49] at 5-7; *see* [ECF 38-1] at 1-2. But the provision on which Lamar relies does not say that. Instead, the modification incorporates into the subcontract the following term from the prime contract between AECOM and VIHFA:

> The Parties will use their best efforts to resolve disputes informally at the lowest possible levels of decision-making, and consensual alternative dispute resolution processes may be used by mutual agreement of the parties.

[ECF 38-1] at 2. There is nothing in this or any other part of Modification 13 that purports to amend or replace the requirements in section 6.6.2 of the subcontract. Instead, the modification merely requires that the parties use their best efforts to resolve disputes informally in the first instance. If those efforts prove unsuccessful, then the subcontract provides for the more formal process set out in section 6.6.2.

Finally, Lamar posits that the court cannot determine whether a valid agreement to arbitrate exists "because Amendment 13 expressly modified the dispute resolution provisions of the Master Subcontract Agreement to provide that alternative dispute resolution processes may be utilized

*Lamar v. AECOM, et al.*
Civil No. 2020-48
Page 9

only by mutual agreement of the parties." [ECF 49] at 8. But, the Court has already concluded that Modification 13 did not result in an abrogation of the arbitration provision in section 6.6.2 of the subcontract. Moreover, to the extent there exists a question as to whether Lamar's claim is arbitrable given that Lamar named VIHFA in the complaint, section 6.6.2 provides that "any issues regarding the arbitrability of any dispute shall be determined by the arbitrator(s)." [ECF 1-2] at 23. This language constitutes precisely the "clear and unmistakable evidence" of delegation of authority that the *Schein* Court required. 139 S. Ct. at 530 (quotation marks omitted). As a result, the Court "may not decide the arbitrability issue." *Id*.

## IV. CONCLUSION

For the foregoing reasons, and the premises considered, it is ORDERED that:

(1) the motion to compel arbitration is GRANTED;

(2) this matter shall be STAYED while arbitration proceeds; and

(3) the parties shall submit a joint report regarding the status of the arbitration every 90 days, starting on January 15, 2021.

**Dated:** October 8, 2020         S\_____
                                      **RUTH MILLER**
                                      United States Magistrate Judge